

Signed October 06, 2011.

_Ronald B. King_
Ronald B. King
United States Chief Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| R.G. & C. AUTOMOTIVE, INC. | § § | CASE NO. 10-53385-RBK |
| | § | CHAPTER 11 |
| R.L. & SONS, LLC | § § | CASE NO. 10-53403-RBK |
| | § § | CHAPTER 11 |
| CAVARICCI, LLC, | § § | CASE NO. 10-53405-RBK |
| DEBTORS | § § | CHAPTER 11 |

OPINION

On September 2, 2010, R.G. & C. Automotive, Inc., R.L. & Sons, LLC, and Cavaricci, LLC (collectively, "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Debtors operate four transmission repair shops in San Antonio. Prior to Debtors' bankruptcy, on September 18, 2008, Debtors entered into an agreement with Martin Gutierrez and Automotive Surgeons, Inc. ("Martin") to obtain advertising space in the AT&T Yellow Pages. Pursuant to the

terms of the advertising agreement, Debtors were to pay $13,000.00 per month to Martin for a period of 12 years, and in exchange, Martin was to arrange for advertising space in the AT&T Yellow Pages for Debtors. Subsequent to Debtors' filing for bankruptcy, Martin filed a secured claim, asserting a security interest in telephone numbers, but with no proof of perfection, in the amount of $1,768,000.00.

On September 29, 2010, this Court ordered that the exclusivity period for Debtors to propose plans of reorganization would end on November 1, 2010. Debtors then filed Chapter 11 plans on November 1, 2011. Subsequently, on January 2, 2011, Debtors filed their Amended Joint Plan of Reorganization (the "Plan"). The Plan proposes to satisfy Martin's claim for post-petition advertising costs, but as to Martin's claim for amounts owed for pre-petition advertising, Debtors' Plan purports to reject the agreement that formed the basis of the claim. Debtors further objected to the alleged secured status of the claim by written objection as well as in the Plan, and asserted that if required to pay the claim, Debtors would pay only $17,000.00, with a 5.5 percent per annum interest rate, amortized over 72 months. If Debtors' objection to the secured status of Martin's claim were sustained, Martin's claim would be paid as part of the class of general unsecured claims. Finally, Debtors' Plan for the treatment of general unsecured claims provides that should Martin's claim be deemed unsecured in an amount in excess of $250,000.00, other general unsecured creditors may be adversely affected.

The other large creditor in the three cases is 9988 Enterprises, Ltd., which sold a franchise to Debtors in 2005. 9988 Enterprises filed a secured claim, with no proof of attachment or perfection of a security interest, in the amount of $668,559.00. 9988 Enterprises would receive monthly

payments for almost 9 years under the proposed Plan, starting at $4,622.00 per month and escalating to $7,617.00 per month. 9988 Enterprises consented to its treatment and voted for the Plan. Both the claims of 9988 Enterprises and Martin are unsecured claims because no proof of a perfected security interest was attached to either claim.

Because the Debtors filed objections to Martin's claim, Martin filed a Motion to Allow and Estimate Claims of Automotive Surgeons, Inc. and Martin Gutierrez, Individually. This Court granted the Motion and ordered that the claims were to be estimated for voting purposes as one unsecured claim in the amount of $750,000.00 for the two claimants, Automotive Surgeons, Inc. and Martin Gutierrez, individually. Martin also filed an objection to confirmation of the Plan arguing that the Plan: (1) is not fair and equitable and fails to comply with the absolute priority rule; (2) fails to provide for full payment of Martin's administrative claim for post-petition advertising or Martin's secured and unsecured claims pursuant to sections 1129(b)(2)(A) and (b)(2)(B); (3) was not proposed in good faith or for legitimate business reasons; (4) violates section 1129(a)(1) and (2) or section 524(e); (5) is not feasible; (6) fails to provide adequate means for the Plan's implementation; and (7) manipulates the classification and treatment of claims. On January 31, 2011, this Court heard Debtors' motions for substantive consolidation and held the confirmation hearing. This Opinion will address two of the objections to confirmation, which will be dispositive.

1. ***Section 1129(a)(11)***.

Martin alleges that Debtors' Plan violates section 1129(a)(11) of the Bankruptcy Code because "it lacks a reasonable probability of payment and confirmation of the plan is likely to be followed by liquidation or need for further financial reorganization of the debtor not proposed by the

plan." Section 1129(a)(11) of the Code requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan . . . ." 11 U.S.C. § 1129(a)(11). The burden is on the proponent of the plan to show that the plan has a reasonable likelihood of success. *In re M&S Assocs., Ltd.*, 138 B.R. 845, 848 (Bankr. W.D. Tex. 1992). "[S]uccess need not be guaranteed, but the court must be satisfied that there is a reasonable prospect of a plan's success and that it is workable." *Id*. at 849. While certainty is not required, a court "must make a specific finding that the plan, as proposed, is feasible." *Id*. at 848. Factors a court should consider to determine whether a plan is feasible include:

> (1) the adequacy of the debtor's capital structure; (2) the earning power of the debtor's business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospect of a sufficiently successful operation to enable performance of the provisions of the plan.

*Save Our Springs (S.O.S.) Alliance, Inc.*, 632 F.3d 168, 173 (5th Cir. 2011) (*quoting In re M&S Assocs., Ltd.*, 138 B.R. at 849).

In addition, any income projections offered to support a plan of reorganization should be based on "concrete evidence of financial progress, and must not be speculative, conjectural or unrealistic." *M&S* at 849. In *M&S*, the debtor presented "little evidence regarding the feasibility of its Plan" and "testified simply that in his opinion, based on the projections and his experience, [his business] would generate sufficient cash flow during the period of the Plan to make all the required minimum payments." *Id* at 850. Because the debtor offered "[n]o independent expert testimony . . . regarding the feasibility of the Plan," this Court ultimately concluded that confirmation of the

debtor's plan should be denied "based upon the lack of feasibility of the Plan to repay the principal indebtedness." *Id*. at 850-52.

In these cases, Debtors' evidence supporting feasibility is Ron Gutierrez's testimony at the confirmation hearing. The projections offered by Mr. Gutierrez were compiled by his sister, who is not an accountant. Mr. Gutierrez's sister did not compile the projections for the purpose of introducing them in Court. Debtors assert that the numbers used in their projections are based on numbers from the past two business years, and thus the projections are a reasonable forecast of business in the future. Like the debtor in *M&S*, Debtors here have presented "little evidence regarding the feasibility of its Plan" and offered "no independent expert testimony . . . regarding the feasibility of the Plan." *Id*. at 850. Most of the six *M&S* factors were not addressed in the Debtors' proof. This evidence does not satisfy the requirements outlined in *S.O.S.* and *M&S* and is insufficient to prove feasibility. Therefore, because Debtors failed to meet their burden to show that the Plan is feasible, Debtors' Plan should not be confirmed.

2. ***Section 1122(a) & 1129(a)(3): Gerrymandering***.

Martin further claims that Debtors manufactured an impaired class, Class 2.1, which represents only the claim of 9988 Enterprises. Although Debtors argued at trial that they did not manufacture Class 2.1, Debtors adduced no evidence to support separate classification of 9988 Enterprises.

The leading cases on gerrymandering classes in a chapter 11 plan are ***S.O.S.*** and ***Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture*** (*In re Greystone III Joint Venture*), 995 F.2d 1274 (5th Cir. 1991). In *Greystone*, Chief Judge Edith Jones announced a clear rule for the panel:

5

> [T]hou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan . . . . [S]uch classification may only be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims.

995 F.2d at 1279. *S.O.S.* recently reaffirmed the holding in *Greystone* in disapproving gerrymandering the vote by putting a dissenting creditor into a separate class. 632 F.3d at 174.

In these cases, the Debtors clearly classified 9988 Enterprises separately from Martin in order to obtain an accepting impaired class. Martin and 9988 Enterprises are both unsecured creditors because their alleged security interests were nonexistent or unperfected. The vote of Martin, if counted with other unsecured creditors, would have prevented acceptance by one impaired class, thereby defeating confirmation. As in *Greystone* and *S.O.S.*, none of the Debtors' testimony or evidence supported any business or other legitimate reason for classifying Martin's claim separately from those of 9988 Enterprises and other unsecured creditors. Therefore, the objection to classification under sections 1122(a) and 1129(a)(3) must be sustained.

## Conclusion

Confirmation of the Debtors' Amended Joint Plan of Reorganization will be denied. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 and 9014. A separate order will be entered.

# # #